```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION


LINDSEY W. PARNELL,              :

      Plaintiff,                 :

vs.                              :
                                      CIVIL ACTION 05-0136-KD-M
JO ANNE B. BARNHART,             :
Commissioner of
Social Security,                 :

      Defendant.                 :
```

## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. §§ 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits.  The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was heard on February 23, 2006.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor of Defendant Jo Anne B. Barnhart and against Plaintiff Lindsey W. Parnell on all claims.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.  *Richard-*

*son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born November 22, 1954.  At the time of the administrative hearing, Parnell was forty-seven years old, had completed a high school education (Tr. 323), and had previous work experience as an insulator/mechanic (Tr. 324).  In claiming benefits, Plaintiff alleges disability due to status post left hand injury (Doc. 9 Fact Sheet).

The Plaintiff protectively filed an application for disability on July 23, 2001 (Tr. 53-57).  Benefits were denied following a hearing by an Administrative Law Judge (hereinafter *ALJ*) who determined that although Parnell could not return to his previous relevant work, he was capable of performing a reduced range of light work (Tr. 11-23).  Plaintiff requested review of the hearing decision (Tr. 9-10) by the Appeals Council, but it was denied (Tr. 5-7).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Parnell alleges that the ALJ did not properly consider the opinions and

conclusions of his treating physician (Doc. 9).[1]  Defendant has responded to—and denies—this claim (Doc. 10).

Plaintiff claims that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of his physician.  Parnell specifically refers to evidence submitted by Dr. Thomas M. Barbour, III (Doc. 9, pp. 5-8).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[2] *see also* 20 C.F.R. § 404.1527 (2005).

The medical evidence shows that Dr. Stephen B. Cope performed emergency surgery on Parnell on April 15, 1999 for a "laceration of [the] left thenar eminence, with lacerated FPL and digital nerves to [the] thumb" (Tr. 105; *see generally* Tr. 104-10).  The next day, Dr. Barbour, a hand surgery specialist, performed a surgery in which he repaired a tendon, nerves, and muscle in the left hand (Tr. 111-15, 296).

Plaintiff began receiving physical therapy at HealthSouth on

---

[1]Plaintiff originally raised a second claim, *i.e.*, that the ALJ did not properly develop the record regarding his vocational opportunities (Doc. 9, pp. 8-10).  However, Parnell's attorney expressly abandoned this claim at oral argument.

[2]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

April 21, 1999 which lasted through July 30, 1999, at which time it was determined that he had reached maximum benefit (Tr. 120-78).  On October 5, 1999, Parnell performed a Functional Work Capacity at HealthSouth; his effort was described as self-limiting (Tr. 179; *see generally* Tr. 206).  The report showed inconsistencies in the assessment and specifically noted pain behaviors (Tr. 186).  The report indicated an ability to lift and carry ten pounds on an occasional and frequent basis; Parnell was also able to sit, stand, walk, climb stairs, bend at the trunk, reach overhead, squat repeatedly, kneel, stoop, crouch, and climb a ladder on a frequent basis though he could never crawl (Tr. 179).  It was concluded that Plaintiff could work at the sedentary level (Tr. 181).

   Parnell underwent further physical therapy at HealthSouth during April 7-24, 2000 because of increased pain and stiffness (Tr. 207-16).  It was noted that Plaintiff was inconsistent with range of motion and sensation testing to the left thumb, though the therapy was ultimately cancelled because insurance would not approve further therapy (Tr. 209).

   On July 10, 2000, Dr. Barbour performed surgery again on Plaintiff's left hand (Tr. 284); Plaintiff then underwent three months of physical therapy, lasting through October 11, 2000 (Tr. 217-79).  In the HealthSouth records, there were several notes of self-limiting in activities (Tr. 226, 232, 234); Barbour's notes indicate Plaintiff's reluctance in using his hand (Tr. 282-84).

Dr. Barbour placed Plaintiff at maximum medical improvement on September 15, 2000, noting that Parnell refused to use his hand (Tr. 282).  Plaintiff was discharged from physical therapy once his progress reached a plateau; it was estimated that he had reached seventy percent of the set goals (Tr. 218).  In a note dated October 17, 2000, Dr. Barbour stated that Parnell could not return to his job (Tr. 281).

On February 2, 2001, Plaintiff complained of pain and cramping; Barbour stated that he did not know of any further treatment to help him (Tr. 280).  On April 13, 2001, Parnell returned for pain medication; the doctor began chronic treatment with Ultram[3] (*id.*).  A treatment note dated July 17, 2001 indicated that the problems Plaintiff had with his hand were controlled by the Ultram (*id.*).  On December 30, 2001, Dr. Barbour completed a physical capacities evaluation in which he indicated that Parnell was capable of sitting, standing, and walking up to eight hours at a time and could lift and carry up to ten pounds continuously, twenty pounds frequently, and fifty pounds on an occasional basis (Tr. 298).  The surgeon further found that Plaintiff would have no problems working with his right hand though he could not do work requiring simple grasping or fine manipulation with his left hand; he further indicated

---

[3]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

that Plaintiff should never crawl and could climb only occasionally (*id.*).  Barbour also completed a pain assessment form which indicated that Parnell's pain would distract him from adequately performing his daily activities or work, but that an increase in physical activity would not prevent adequate functioning (Tr. 299).  The doctor further noted that Plaintiff's medications would not prevent him from working (Tr. 300).

After faithfully reporting the medical and physical therapy information summarized herein, the ALJ concluded that Parnell was capable of performing a reduced range of light work[4] (Tr. 20); he reached this conclusion even though the physical capacity evaluation completed by Dr. Barbour suggested that Plaintiff was possibly capable of medium work[5] and even though Plaintiff's

---

[4]Light work has been defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2005).

[5]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c) (2005).

testimony was found to be non-credible.[6]  A vocational expert (hereinafter *VE*) testified at the hearing that, based on Dr. Barbour's completed physical capacities evaluation, Plaintiff would be able to perform work as a news vendor, interviewer, crossing guard, or usher, all described as light, unskilled jobs (Tr. 340-43).  The ALJ accepted the VE's conclusions as his own (Tr. 20).

Plaintiff argues that the ALJ improperly discounted Dr. Barbour's opinion that his pain was "present to such an extent as to be distracting to adequate performance of daily activities or work" (Tr. 299).  Parnell urges this Court to accept this finding as equivalent to a finding that he had marked concentration deficits due to pain which would preclude him from the specific jobs suggested by the VE (Doc. 9, p. 8; *cf*. Tr. 343).

The Court rejects this argument, finding instead that the ALJ correctly noted that Dr. Barbour had completed both the physical capacities evaluation and pain questionnaire at the same time and taken into account his history of treating Parnell in completing those forms.  The medical evidence clearly shows that Plaintiff never reached his full potential according to either Barbour or the therapists at HealthSouth as Plaintiff would not exert full effort; in spite of that, the treating physician found Plaintiff capable of performing medium work.  Dr. Barbour also

---

[6]The Court notes that Plaintiff has not challenged this finding.

noted in his treatment notes that Parnell's pain was controlled with Ultram.  The two forms completed by Dr. Barbour complement each other, depicting the entire assessment of Parnell's abilities; together, these forms indicate that Plaintiff is capable of, at least, the specific jobs the ALJ found that Plaintiff could perform.  The Court finds no merit in Plaintiff's claim that the ALJ did not properly consider the opinions of Dr. Barbour.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Jo Anne B. Barnhart and against Plaintiff Lindsey W. Parnell.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

    A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **<u>Transcript (applicable where proceedings tape recorded)</u>**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

    DONE this 3rd day of March, 2006.

                                            <u>s/BERT W. MILLING, JR.</u>
                                              UNITED STATES MAGISTRATE JUDGE